UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
────────────────────────────────────────

DESHARD WRIGHT,

                          Petitioner,                          **REPORT AND**
                                                              **RECOMMENDATION**

            V.                                                  02-CV-508

GEORGE DUNCAN,

                          Respondent.

────────────────────────────────────────


## I. INTRODUCTION

Petitioner Deshard Wright, acting *pro se*, commenced this action seeking habeas corpus relief pursuant to 28 U.S.C. § 2254.  Petitioner is an inmate at the Shawangunk Correctional Facility.  In 1996, he was convicted in a New York State court of Second Degree Murder, Second Degree Attempted Murder, and Second Degree Criminal Possession of a Weapon.  Petitioner contends that his conviction was imposed in violation of his constitutional rights and should therefore be vacated.

This matter was referred to the undersigned by the Honorable Norman A. Mordue, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and is presently before this Court for a report and recommendation. (Docket No. 24).


## II. BACKGROUND

**A.     Facts**

The following factual summary is derived from the state court records.   At approximately 9:00p.m. in the evening of November 2, 1995, Robert Crouse was assaulted

while riding his bicycle on Mary Street in the City of Utica, New York.  (T at 46-47).[1]  The assailants also stole Crouse's bicycle.

A short while later, Crouse returned to Mary Street accompanied by his father, Robert Crouse, Sr.[2], Debbie Crouse,[3] and Gabriel Ingrassia.  Crouse confronted a group of black males, whom he believed were responsible for the assault and theft of his bicycle. (T at 48-50, 193-94).  The police were eventually summoned to break up the argument and Crouse left the scene.  (T at 52-54).

At approximately 11:00p.m., Crouse returned to the scene for a third time, ostensibly to look for a hat believed to have been left behind during the assault.  (T at 55, 198, 316, 327).    On this occasion, Ingrassia and two other friends, Ciro Raspante and Joseph Donatello, accompanied Crouse.  The four teenagers arrived at the scene in a vehicle driven by Raspante.[4] (T at 197-198, 206-210, 227, 316, 327).  Crouse exited the car to look for his hat. (T at 200-201).  At that point, three of the black males involved in the earlier argument with Crouse exited a home on Mary Street and another argument with Crouse ensued.  (T at 201-210).  Ingrassia, Raspante, and Donatello remained in the vehicle during the argument.  (T at 215, 283).

As the argument intensified, one of the black males pulled a gun from his waistband

---

[1]References preceded by "T" are to the transcript pages of Petitioner's trial.

[2]Robert Crouse's father is not technically a "Sr.", because they have different middle names.  (T at 45).  However, for clarity purposes,  when referring to Robert Crouse's father, this Court will use a "Sr." after his name.

[3]Ms. Debbie Crouse was the elder Crouse's wife.  (T at 61).

[4]At the time, Crouse and Ingrassia were nineteen (19) years old, Raspante was seventeen (17) and Donatello was fourteen (14).  (T at 198, 316, 327).

2

and shot Crouse twice in the leg and once in the chest.  (T at 211-214, 217, 231-232, 284-285).  The shooter also fired one shot at Ingrassia, who was seated in the front passenger seat of the vehicle.  (T at 214-215).  The bullet shattered, but did not penetrate the passenger side of the front windshield.  (T at 215).  The shooter and his two companions fled the scene.  (T at 215).  Ingrassia, Raspante, and Donatello placed Crouse in the backseat of the car and drove to the hospital.  (T at 218, 288-289).  Crouse was later pronounced dead from the gunshot wound to his chest. (T at 376-377).

Shortly after the shooting, Ingrassia, Raspante, and Donataello were transported to the police station from the hospital and interviewed.  (T at 227, 312, 347).  The teenagers gave descriptions of the three black males involved in the argument with Crouse.  (T at 228, 282-284, 336).  These individuals were later identified as Alexander Thompson, Jamie Thompson, and Deshard Wright (Petitioner).[5]  The person later identified as Alexander Thompson was described as short and stocky.  (T at 208, 228, 282, 333, 336).  Both Jamie Thompson and Petitioner were described as taller than Alexander Thompson and thin. (T at 228, 282, 333).[6]

Within hours of the shooting, Donatello, who was sitting in the backseat of the vehicle at the time of the shooting, told the police that the shooter was wearing a black knit hat.  (T at 295-296).  Donatello was shown a photo array and identified Jamie Thompson as the shooter. (T at 290, 296, 300-301, 710).  He also told the police that although he saw

---

[5]Alexander Thompson is Jamie Thompson's uncle.  Although the record provided to the Court is not specific, it appears that Alexander Thompson was at least thirty (30) at the time of the shooting and Jamie Thompson was approximately sixteen (16) years old.   The record shows that Petitioner was eighteen (18) years old at the time of the shooting.

It was subsequently determined that Petitioner was approximately two inches taller than Jamie Thompson.

the shooter and a short, stocky man, he "didn't see the third guy." (T at 297-98).  Donatello was shown a photo array that included Petitioner's photograph, but did not identify Petitioner as the gunman.  (T at 314).

After the interview was completed, Donatello returned home. The next day, he returned to the station and advised the police that he remembered that the shooter's name was Jamie Thompson.  (T at 304, 710-711).  Donatello explained that he was certain the shooter was Jamie Thompson, because they had attended school together.  (T at 290-91,304, 711).

During his interview shortly after the shooting, Raspante, the driver of the vehicle, also told the police that the shooter was wearing a black knit hat.  (T at 352).  Raspante also stated that aside from the short stocky male and the shooter, he could not provide a description of the third individual.  (T at 350).  Raspante further said that he could identify the shooter if he saw him again.  (T at 349, 350).  After being shown photo arrays, which included photographs of Petitioner and Jaime Thompson, Raspante was unable to identify the shooter. (T at 351-352).  Ingrassia, who was seated in the passenger seat, was also interviewed by the police and identified Petitioner as the shooter after being shown a photo array. (T at 259).

The day after the shooting, November 3, 1995, Detective Michael Acquaviva of the Utica Police Department, along with two other members of the police department, visited the home of Mrs. Allena Rivera, the mother of Jaime Thompson.  (T at 632).  After entering the home, the police encountered Jaime Thompson, who was exiting his bedroom, and Petitioner, who was seated on a living room couch.  (T at 634, 642).  Mrs. Rivera signed a search waiver and the police searched the home.  (T at 635, 637-38).

4

The police discovered a black knit hat in Thompson's bedroom and recovered Crouse's bicycle from the house. (T at 639, 643).  The murder weapon was never recovered.  (T at 676).

Based upon the evidence discovered in the Rivera home and the eyewitness statements provided by Raspante and Donatello, Jamie Thompson was charged with second degree murder via a criminal complaint prepared by Detective Acquaviva. (T at 665).

In the days that followed, Donatello began to reconsider the identification that he made shortly after the shooting.  Although Donatello identified Jamie Thompson as the shooter and did not pick Petitioner out of a photo array, he subsequently concluded that he had been mistaken.  At trial, Donatello testified that he "realized that . . . the person [he] [saw] was the tallest one, and then [he] realized that Jamie wasn't the tallest one, he was the medium-sized one, so [he] notified the police, and [he] told them he made a mistake." (T at 292, 725).  After learning that Petitioner was taller than Thompson,[7] Donatello decided that he had been mistaken and that Petitioner was the actual shooter. (T at 292, 725).

On December 21, 1995, an Oneida County Grand Jury returned Indictment Number 95-492, which charged Petitioner with two counts of Murder in the Second Degree, in violation of New York Penal Law ("NYPL") §125.25(1)[8] (intentional murder) and §125.25(2) (depraved indifference); Criminal Possession of a Weapon in the Second Degree, in violation of NYPL §265.03; and with Attempted Murder in the Second Degree, in violation

---

[7]It is not clear from the record how Donatello learned that Petitioner was taller than Jamie Thompson.  There is some suspicion that Donatello's identification of Petitioner was influenced by others.

[8]Unless otherwise indicated, all references to the NYPL are to McKinney 1998.

5

of NYPL § 110.00 as further defined in §125.25(1).

Although not charged under the same indictment as Petitioner, Jamie Thompson remained charged with Crouse's murder through and including the conclusion of Petitioner's trial. (T at 762, 832-833).

## B.      State Trial Court Proceedings

The Honorable Barry M. Donalty, Oneida County Court Judge, presided over Petitioner's trial proceedings.  The trial began on September 9, 1996 and concluded on September 17, 1996.  Petitioner was represented by Richard P. Ferris, Esq.  At the conclusion of the trial, the jury found Petitioner guilty of one count of intentional Murder in the Second Degree (for the death of Crouse), Criminal Possession of a Weapon in the Second Degree, and Attempted Murder in the Second Degree (for the shooting of Ingrassia).

On October 30, 1996, Petitioner was sentenced to twenty-five (25) years to life for his conviction of Murder in the Second Degree, seven and one-half (7 ½) years to fifteen (15) years for his conviction of Criminal Possession of a Weapon (to run concurrently to his sentence for Murder in the Second Degree), and twelve and one-half (12 ½) years to twenty-five (25) years for his conviction of Attempted Murder in the Second Degree (to run consecutively to his sentence for Murder in the Second Degree).  (S at 33).[9]  Therefore, Petitioner's total aggregate sentence was thirty-seven and one-half (37 ½) years to life.

---

[9]References preceded by "S" are to the transcript pages of Petitioner's sentencing proceedings.

**C.     State Appellate Proceedings**

Petitioner, represented by Linda M. Campbell, Esq., appealed his conviction to the Appellate Division, Fourth Department, of the New York State Supreme Court.  Petitioner asserted six arguments before the Appellate Division: (1) that the trial court violated his right to a fair trial when it denied him the right to call witnesses to provide exculpatory evidence; (2) that the prosecutor's opening statement and summation contained comments constituting prosecutorial misconduct; (3) that the trial court erred when interjecting itself into the questioning of trial witnesses and by repeatedly instructing the jury on Petitioner's involvement in the robbery and assault of Crouse; (4) that the trial court erred in permitting the prosecutor to offer hearsay evidence irrelevant to the issues to be determined by the jury for the purpose of impugning the integrity of the defense team; (5) that the trial court erred in allowing the prosecutor to read into evidence the hearsay portions of the autopsy report that set forth the cause of death; and (6) that the verdict was against the weight of the evidence.

In a decision issued on February 16, 2000, the Appellate Division affirmed Petitioner's conviction.  People v. Wright, 703 N.Y.S.2d 782 (4th Dep't 2000).  The Appellate Division found that Petitioner failed to preserve most of his claims for their review and the claims that were preserved were without merit.  Id.  Petitioner's application for leave to appeal to the Court of Appeals was denied on April 11, 2000. People v. Wright, 94 N.Y.2d 954 (2000).

On February 20, 2001, Petitioner, acting *pro se*, brought a motion pursuant to Criminal Procedure Law ("CPL") § 440.10 to vacate the judgment of conviction entered against him on the basis of ineffective assistance of trial counsel.  Petitioner argued that his trial counsel failed to preserve critical issues for appellate review.  On May 9, 2001, Judge

7

Donalty denied Petitioner's motion pursuant to CPL § 440.10 (2)(c), finding that the claim was procedurally defaulted because it had not been raised on direct appeal.  On June 14, 2001, Petitioner applied for leave to appeal the trial court's decision to the Appellate Division, Fourth Department, which denied leave to appeal on December 13, 2001.

## D.  Federal Habeas Corpus Proceedings

Petitioner, proceeding *pro se*, commenced this action on April 11, 2001, by filing a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Western District of New York. (Docket No. 1).  On April 11, 2002, this action was transferred to the United States District Court for the Northern District of New York (Docket No. 2).  In his Petition, Petitioner asserted the same six grounds for relief that he did before the Appellate Division, with the addition of a seventh ground claiming ineffective assistance of trial counsel.

Thereafter, Petitioner amended his petition after an Order issued by the Honorable Lawrence Kahn, United States District Judge, directed him to clarify the dates of his state court appellate proceedings.  (Docket No. 5).  In his clarification, Petitioner asserted the same seven grounds in his Amended Petition as he did in his original Petition.  (Docket No. 6).  Respondent initially failed to respond to the Petitioner's Amended Petition.  After being court ordered to respond, Respondent filed a Response and memorandum of law opposition.  (Docket Nos. 10, 11).  Petitioner filed his Traverse on December 30, 2002. (Docket No. 17).  This case was referred to the undersigned on February 1, 2007. (Docket

No. 24).[10]

# III. DISCUSSION

## A.    Federal Habeas Corpus Standard

Federal habeas corpus review of a state court conviction is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Under AEDPA, federal courts must give substantial deference to a state court determination that has adjudicated a federal constitutional claim "on the merits."  28 U.S.C. § 2254(d); Sellan v. Kuhlman, 261 F.3d 303, 309-10 (2d Cir. 2001).  The Second Circuit has stated that an "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." Sellan, 261 F.3d at 313 (quotation omitted).  The Second Circuit has also held that even a one-word denial of a petitioner's claim is sufficient to constitute an "adjudication on the merits" for purposes of AEDPA.  Id. at 312-313.

Specifically, AEDPA requires that where a state court has adjudicated the merits of a Petitioner's federal claim, habeas corpus relief may not be granted unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[10]Upon receiving the referral, this Court determined that Respondent had not provided the proper state court records.  The appropriate state court records were thereafter obtained by Respondent and provided to this Court.

28 U.S.C. § 2254(d).

While both AEDPA and its predecessor statute recognize that a presumption of correctness shall apply to state court findings of fact, Whitaker v. Meachum, 123 F.3d 714, 715 n. 1 (2d Cir. 1997), AEDPA also requires a Petitioner to rebut that presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); LanFranco v. Murray, 313 F.3d 112, 117 (2d Cir. 2002). A presumption of correctness applies to findings by both state trial and appellate courts. Galarza v. Keane, 252 F.3d 630, 635 (2d Cir. 2001); Whitaker, 123 F.3d at 715 n.1.

In Williams v. Taylor, 529 U.S. 362, 413 (2000), the Supreme Court defined the phrases "contrary to" and "unreasonable application of" clearly established federal law. A state court decision is "contrary to clearly established federal law . . . if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Court] has on a set of materially indistinguishable facts." Id.

A state court decision involves "an unreasonable application of" Supreme Court case law if it "identifies the correct governing legal principle from [the Court's] decisions but unreasonably applies that principle to the particular facts of [a] prisoner's case." Id.

Under this standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. In order to grant the writ there must be "some increment of incorrectness beyond error," although "the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to

10

suggest judicial incompetence." <u>Francis S. v. Stone</u>, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

**B.    Petitioner's Claims**

As set forth above, Petitioner asserts seven (7) claims in support of his Amended Petition for habeas relief.  This Court will address each claim in turn.

**1.    Due Process – Exculpatory Witnesses**

In Petitioner's first claim for habeas relief, he asserts that he was deprived of his due process right to a fundamentally fair trial when the trial court refused to permit the testimony of two witnesses who would have offered exculpatory testimony.  Petitioner's defense theory was that Jamie Thompson was the real shooter.  This defense was based upon, *inter alia,* the statements provided to the police by Raspante and Donatello shortly after the shooting, as well as the black knit hat found in Thompson's bedroom.  Petitioner's trial counsel also intended to offer testimony from Reggie Leggett and Ezekiel McClain.

According to counsel's offer of proof, Leggett, an inmate in the Oneida County Jail, was prepared to testify that Jamie Thompson confessed to shooting Crouse.  (T at 761). McClain, another inmate, would have testified that he overheard the conversation between Thompson and Leggett, in which Thompson confessed to Crouse's murder. (T at 756).

The trial court refused to allow the testimony of either Leggett or McClain, ruling that their testimony constituted inadmissible hearsay.  (T at 759, 762).  Though perhaps somewhat inartfully stated, defense counsel argued that Thompson's confession was an admission against penal interest and, thus, excepted from the hearsay rule.  (T at 756).  In

addition, counsel suggested that preclusion of the exculpatory testimony would result in "unfairness" to Petitioner.  (T at 759-60).  The trial court nevertheless refused to allow the testimony, finding that the declaration against penal interest exception to the hearsay rule was inapplicable because Jamie Thompson was not "unavailable."  (T at 757, 759, 761, 762).

On direct appeal, Petitioner argued that the trial court's exclusion of the exculpatory testimony was erroneous as a matter of state law. (Defendant's Brief to the Appellate Division, at p. 15).  In addition, Petitioner contended that the exclusion of the exculpatory testimony violated his due process right to a fundamentally fair trial, as recognized by the United States Supreme Court in Chambers v. Mississippi, 410 U.S. 284, 294 (1973), which Petitioner cited in support of his argument. (Defendant's Brief to the Appellate Division, at p. 14).

In its decision affirming the conviction, the Appellate Division stated that Petitioner had "failed to preserve for our review his contention that hearsay statements made to witnesses by an individual implicating himself in the shooting should have been received as declarations against penal interest." Wright, 703 N.Y.S. 2d at 782 (citing People v. Steward, 684 N.Y.S. 2d 109 (4th Dep't 1998)).  The appellate court further held that "[i]n any event, defendant failed to demonstrate that the declarant was unavailable at the time of trial." Id.

The Appellate Division neither cited nor referenced Chambers and the decision contains no discussion as to whether the application of the hearsay rule in this particular case deprived Petitioner of his constitutional right to a fundamentally fair trial.

### a.    Procedural Bar

"Where the highest state court that rendered a judgment in the case 'clearly and

12

expressly states that its judgment rests on a state procedural bar,' such procedural default constitutes independent and adequate state grounds to deny habeas relief." Corney v. Henri, 05-CV-338, 2007 WL 1388118, at *5 (N.D.N.Y. May 9, 2007) (quoting Harris v. Reed, 489 U.S. 255, 263, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989)); see also Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir.1996); Levine v. Commissioner of Corr. Servs., 44 F.3d 121, 126 (2d Cir.1995).

In such cases, a federal court is generally barred from reviewing the petitioner's claims. A federal habeas court may review a procedurally barred claim if the petitioner demonstrates (1) cause for the default and resulting prejudice, or (2) that the failure to consider the claims will "result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 2566, 115 L.Ed.2d 640 (1991); see also Edwards v. Carpenter, 529 U.S. 446, 451, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000).

In addition, however, the state procedural bar must be supported by a "fair or substantial basis" in state law. Garcia v. Lewis, 188 F.3d 71, 77-82 (2d Cir. 1999); see also Caston v. Costello, 74 F. Supp. 2d 262, 264 (E.D.N.Y. 1999) (reviewing and granting claim on the merits because "the state court's determination that [the] . . . claim was procedurally defaulted [did] not have a 'fair and substantial basis' in state law").

In the present case, Respondent argues that this Court cannot address the merits of Petitioner's due process claim because that claim is procedurally barred.  Respondent's argument in this regard consists solely of a discussion in its memorandum of law regarding the general legal standard regarding procedurally barred claims. (Respondent's Memorandum of Law, Docket No. 11, at p. 10-15).  Rather, Respondent elected not to include any discussion or argument regarding (a) whether the procedural bar was supported

13

by a fair and substantial basis under state law or (b) whether Petitioner had demonstrated cause for any alleged default and resulting prejudice.

In addition, Respondent's counsel chose not to offer any arguments as to the merits of Petitioner's due process claim, deciding to rely solely upon the procedural bar.[11] However, a review of the trial transcript reveals that the Appellate Division's conclusion as to this issue was clearly not supported by a fair or substantial basis in state law.  As noted above, the Appellate Division concluded that "[d]efendant failed to preserve for our review his contention that hearsay statements made to witnesses by an individual implicating himself in the shooting should have been received as declarations against penal interest."  Wright, 703 N.Y.S.2d 782.

In support of this conclusion, the Appellate Division failed to offer any explanation as to why it believed the claim had not been preserved.  Rather, the court cited a single case, People v. Steward, 256 A.D.2d 1147, 1148, 684 N.Y.S.2d 109 (4th Dep't 1998).  Id.  In pertinent part, the court in Steward found that the defendant's contention that certain testimony "should have been received as declarations against interest [was] not preserved for [their] review." Steward, 684 N.Y.S. 2d at 110.  The Steward court's ruling in this regard was based upon section 470.05 (2) of the New York Criminal Procedure Law, which is commonly known as the "contemporaneous objection" rule.

By citing Steward, the Appellate Division in the present case indicated its belief that Petitioner had failed to preserve the exculpatory witness issue for appellate review by

---

[11] It is notable that Respondent's argument with respect to this claim contains not a single citation to the trial transcript.  In fact, although Respondent provided a general factual background, none of the substantive arguments contained in Respondent's brief contain supporting citations to the trial court records.

14

lodging a contemporaneous objection at trial.

Although non-compliance with the contemporaneous objection rule generally bars federal habeas review, the "mere invocation of a procedural bar does not. . . preclude review" by a federal court.  Caston, 74 F. Supp. 2d at 266-67; see also Miller v. Walker, 413 F. Supp.2d 251, 259 (W.D.N.Y. 2006).

Indeed, as the Second Circuit has noted, the habeas court's "responsibility to ensure that the state rule is 'adequate' obligates [the court] to examine the basis for an application of state law." Garcia, 188 F.3d at 77; see also Cotto v. Herbert, 331 F.3d 217, 239 (2d Cir. 2003) ("Before accepting a procedural bar defense, a federal court must examine the adequacy of the alleged procedural default.").  Where the petitioner clearly complied with the applicable state procedural rule, the bar asserted by the state court will not preclude federal habeas review. See Sanford v. Burge, 334 F.Supp.2d 289, 298-300 (E.D.N.Y. 2004); Cotto, 331 F.3d at 240 (citing Lee v. Kemna, 534 U.S. 362, 376, 122 S.Ct. 877, 885, 151 L.Ed.2d 820 (2002)).  As such, this Court must examine the adequacy of the alleged procedural default cited by the Appellate Division in this particular case[12].

However, as noted above, a review of the trial transcript reveals that Petitioner's trial counsel did, in fact, interpose contemporaneous objections to the trial court's exclusion of Leggett and McClain's testimony. (T at 760-763).  To wit, Petitioner's trial counsel provided argument and an offer of proof regarding the admissibility of McClain's testimony.  (T at 754-760).  In particular, defense counsel contended that the testimony was admissible and

---

[12]Interestingly, in its brief submitted to the Appellate Division, the prosecution did not assert that the exculpatory witness claim was unpreserved pursuant to the contemporaneous objection rule. Accordingly, it appears the Appellate Division raised this procedural issue *sua sponte*.

suggested that exclusion of the same would result in "unfairness " to the defendant.  (T at 759-60).   The trial court ruled that McClain could not testify, which led to the following exchange:

> The Court:   I'm not going to permit Mr. McClain to testify as you propose in this matter.  It is clearly hearsay, and I don't see any exception for the hearsay rule, and so I'm not going to allow that testimony.
>
> Mr. Ferris:   *Exception*.

(T at 760-61) (emphasis added).

Petitioner's trial counsel then offered further argument and an offer of proof regarding the admissibility of Leggett's testimony (T at 761-62), leading to the following exchange:

> The Court:    My ruling is the same.
>
> Mr. Fitzgerald:Your Honor, *I'd like an exception for that, too*.

(T at 763)(emphasis added).

The prosecutor in the case was Timothy Fitzgerald, Esq.  It seems clear that the reference to Mr. Fitzgerald as the attorney noting an exception in the foregoing exchange was a stenographical error.  The trial court had ruled in Mr. Fitzgerald's favor by precluding the testimony of a proposed defense witness.  As such, the prosecutor would have had no reason to note an exception.   Additionally, the fact that the speaker said, "I'd like an exception for that, *too*" leads this Court to believe that Mr. Ferris was the speaker and not Mr. Fitzgerald since Mr. Fitzgerald had not made any previous exceptions.[13]

In any event, the trial record clearly demonstrates that Petitioner's counsel made an

---

[13]However, even if Mr. Fitzgerald did note the exception, the issue still would have been preserved for the Appellate Division's review under the "contemporaneous objection" rule.  See People v. Ayala, 534 N.Y.S.2d 1005, 1011 (2nd Dep't 1988), aff'd, 75 N.Y.2d 422, 554 N.Y.S.2d 412 (1990) (in case where "protest" was made by the government, issue pressed by defense on appeal was still preserved because "a question of law is preserved if the point was expressly decided by the trial court in response to a protest, even though the protesting party overlooked that argument when making the protest").

offer of proof concerning the testimony of McClain and Leggett, argued that the testimony was admissible and proper, and opined that the trial court's refusal to permit the testimony on the grounds that it was unfair and interposed timely objections.[14]

In light of the foregoing, this Court finds that Petitioner's trial counsel unmistakably "made his position . . . known to the court" with sufficient specificity, given the realities of trial, to allow the court to respond and address the issue, as required under the contemporaneous objection rule. See CPL § 470.05 (2); Sanford, 334 F.Supp.2d at 298-300.

As such, this Court finds that the procedural bar cited by the Appellate Division in this particular case was not adequate to preclude federal habeas review of the merits of Petitioner's claim.  See Tunnon v. Miller, No. 01-CV-8318, 2003 WL 22964569, at *4 (E.D.N.Y. Sept. 18, 2003) ("Review of the transcript shows that objection was lodged by defense counsel in sufficient manner to have placed the trial court on notice that petitioner was challenging the statements on hearsay grounds. The procedural bar under these circumstances was not adequate to bar federal review of the claim."); Murden v. Artuz, 253 F. Supp. 2d 376, 385-86 (E.D.N.Y. 2001) (addressing claim on the merits because there was "some question as to the adequacy of the Appellate Division's reliance on a procedural bar"); see also Williams v. Lane, 826 F.2d 654, 659-61 (7th Cir. 1987) (holding that state court finding of procedural default did not bar review where record showed that defense counsel had made necessary objection at trial).

---

[14]Moreover, in addition to the exchanges quoted above, trial counsel made a post-trial motion in which he asserted that the preclusion of McClain and Leggett was improper.  The trial court denied the motion at sentencing. (S. at 11).

Accordingly, the Court will review the merits of Petitioner's claim regarding the trial court's refusal to permit the exculpatory testimony of McClain and Leggett.[15]

### b.     Merits of Petitioner's Claim

Generally, evidentiary rulings in a state court do not warrant habeas corpus relief, and such relief is available "*only* where petitioner can show that the error deprived her of a fundamentally fair trial." Taylor v. Curry, 708 F.2d 886, 891 (2d Cir.1983) (emphasis in original).   Under this standard, for a habeas petitioner to prevail on a claim that an evidentiary error amounted to a deprivation of due process, he must show that the error was so pervasive as to have denied him a fundamentally fair trial. United States v. Agurs, 427 U.S. 97, 108, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

In the present case, as discussed *supra*, Petitioner argues that the trial court's refusal to permit the testimony of McClain and Leggett deprived him of his due process right to a fundamentally fair trial.   With respect to the merits of this claim, the Appellate Division held that "[i]n any event," the testimony of McClain and Leggett was properly excluded because "defendant failed to demonstrate that the declarant was unavailable as a witness at trial." Wright, 703 N.Y.S.2d at 782.

Because the Appellate Division addressed the merits of Petitioner's claim, albeit in the alternative, this Court must apply the AEDPA standard of review.   Thus, the question presented is whether the Appellate Division's adjudication "resulted in a decision that was

_____

[15]As noted above, Respondent, through counsel, elected to oppose this particular claim solely on procedural grounds.   Respondent's counsel offered no argument or discussion concerning the the merits of the claim.   With respect to this matter, this Court notes that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law, and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

## I.      Application of New York's Hearsay Rule

There is no dispute regarding the fact that the testimony of McClain and Leggett constituted hearsay.  McClain and Leggett sought to testify as to an out-of-court statement (a confession) by a third party (Jamie Thompson) and the statement was being offered for the truth of the matter asserted therein (*i.e.* to show that Thompson committed the murder). The initial question is therefore whether the hearsay testimony was admissible as a declaration against penal interest, which is a hearsay exception recognized by New York State. See People v. Settles, 46 N.Y. 154, 412 N.Y.S.2d 874, 882-884 (1978).

Pursuant to Settles, four elements must be satisfied in order for a statement to be admissible as a declaration against penal interest:

> [F]irst, the declarant must be unavailable as a witness at trial; second, when the statement was made the declarant must be aware that it was adverse to his penal interest; third, the declarant must have competent knowledge of the facts underlying the statement; and fourth, and most important, supporting circumstances independent of the statement itself must be present to attest to its trustworthiness and reliability.

Settles, 412 N.Y.S. 2d at 882.  The Appellate Division concluded that the Settles standard had not been met with respect to McClain and Leggett because the declarant (Thompson) was not unavailable as a witness.  The record indicates that Thompson was present in the courthouse and could have been called as a witness by the defense. (T at 758-759).

Petitioner's trial counsel asserted that Thompson was practically unavailable because

19

(a) he had previously refused to take the stand when called as a witness for the prosecution and (b) because he almost certainly would avoid testifying by invoking his Fifth Amendment privilege. (T at 757-758).  Although Petitioner's trial counsel stated that he planned to call Thompson as a witness to conclusively demonstrate his unavailability (T 758-759), this apparently never happened, for reasons not clear from the record.

Although this Court notes that attempting to call Thompson would likely have been an exercise in futility, it appears that such an exercise is required to demonstrate unavailability under New York law.  See, e.g., People v. Anderson,545 N.Y.S.2d 604, 606 (2d Dep't 1989).  As such, this Court finds that the Appellate Division's decision that the testimony at issue did not qualify for the declaration against penal interest hearsay exception under New York law was not based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

### ii.    *Chambers* Due Process Standard

However, the inquiry does not end there.  This Court must still determine whether the exclusion of the hearsay testimony was proper under the broader standard articulated by the Supreme Court in Chambers v. Mississippi, 410 U.S. 284, 93 S. Ct. 1038, 35 L.Ed. 2d 297 (1973).

In Chambers, the Court held that "the Due Process Clause affords criminal defendants the right to introduce into evidence third parties' declarations against penal interest – their confessions – when the circumstances surrounding the statements 'provid[e] considerable assurance of their reliability.'" Lilly v. Virginia, 527 U.S. 116, 127, 119 S. Ct. 1887, 1895 (1999) (quoting Chambers, 410 U.S. at 300).

The facts of Chambers are particularly instructive as concerns the present case.  In

20

<u>Chambers</u>, the Supreme Court found that although the evidence at issue was technically hearsay under Mississippi law, it nevertheless should have been admitted because (1) it had sufficient indicia of reliability and (2) its exclusion deprived the defendant of a fundamentally fair trial. <u>Id.</u> at 302.

In reaching this conclusion, the Supreme Court held that "where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice." <u>Id.</u>

Under the Second Circuit's "interpretation of <u>Chambers</u>, trial court evidentiary rulings will not be set aside except where the evidence excluded is of extreme probative value, *for example confessions of a third party*, and where the evidence has substantial indicia of reliability, including corroboration." <u>Soto v. Lefevre</u>, 651 F. Supp. 588, 597 (S.D.N.Y. 1986) (citing <u>Grochulski v. Henderson</u>, 637 F.2d 50, 55 (2d Cir.1980)) (emphasis added).

This Court finds that the testimony proffered by Petitioner falls squarely within the exception recognized in <u>Chambers</u> and the Second Circuit's interpretation therof.  To wit, the testimony of McClain and Leggett was exceptionally probative.  Petitioner's entire defense rested on the argument that Jamie Thompson shot and killed Crouse.  According to the offer of proof, McClain and Leggett were prepared to testify that Thompson confessed to the murder in their presence.  This Court has no difficulty in concluding that this evidence was "crucial, critical, [and] highly significant." <u>Collins</u>, 755 F.2d at 19.

Moreover, the testimony bore substantial indicia of reliability.  McClain and Leggett did not appear to have any incentive to fabricate their testimony.  They surely could not have hoped to secure a favorable disposition with respect to their particular charges by testifying on behalf of the defense.  Customarily, the prosecution does not offer favorable dispositions

21

to witnesses testifying for the defense.   In addition, McClain's testimony corroborated Leggett's testimony and *vice versa*.   Further assurance of trustworthiness was provided by the evidence in the record tending to show that Jamie Thompson shot Robert Crouse, including the initial identification of Thompson as the shooter by at least one eyewitness at a crucial point in time and the discovery of the black knit cap in Thompson's bedroom. (T 290-291, 352, 639).   Indeed, at the very moment when the testimony of McClain and Leggett was being proffered by Petitioner's counsel, Jamie Thompson was being held on charges that he murdered Crouse. (T at 665, 762, 832).

### iii.    State Court's Failure to Consider Due Process Rights

At the time of Petitioner's trial, it was clearly established federal law, as determined by the Supreme Court in <u>Chambers</u>, "that another's confession, which bears sufficient indicia of reliability and is offered into evidence by a defendant may not be excluded through a mechanistic application of the hearsay rule without consideration of the defendant's right to present a defense under the Due Process Clause of the Fourteenth Amendment." <u>Jones v. Berbary</u>, No. 00-CV-0234, 2002 WL 1628986, at *6 (W.D.N.Y. July 11, 2002) (noting that <u>Chambers</u> rule concerning admission of hearsay evidence is clearly established federal law).

The Appellate Division did not discuss, consider, or analyze whether the application of New York's hearsay rule in this particular instance operated to deprive Petitioner of his right to present a defense, which is a necessary component of the fundamentally fair trial guaranteed by the Due Process Clause of the Fourteenth Amendment.

As the Second Circuit has noted, "[t]he concept of 'fundamental fairness' is sometimes an elusive one." <u>Taylor</u>, 708 F.2d at 891.  "Where an erroneous evidentiary ruling

22

is made, and relevant evidence is thereby excluded, the reviewing court's duty is to

determine whether the excluded evidence was material to the presentation of the defense"

Id.  With respect to this issue, the Supreme Court has said that:

> The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt. Such a finding is permissible only if supported by evidence establishing guilt beyond a reasonable doubt. It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt.

United States v. Agurs, 427 U.S. 97, 112-13, 96 S.Ct. 2392, 2401-02, 49 L.Ed.2d 342 (1976).

This Court finds that the erroneous exclusion of highly probative exculpatory evidence

deprived Petitioner of a fundamentally fair trial.  Viewing the proposed testimony of McClain

and Leggett in the context of the entire state court record, testimony regarding a confession

made by Jamie Thompson was clearly material to the presentation of the Petitioner's

defense.

The prosecution's case was based largely upon the eyewitness testimony of Ingrassia,

Raspante, and Donatello.  As discussed above, Donatello identified Jamie Thompson as the

shooter in a statement given within hours after the murder.  Both Donatello and Raspante

told the police that the shooter was wearing a black knit hat.  The police discovered a hat

matching that description in Jamie Thompson's bedroom together with the bicycle in

Thompson's home.  Although Ingrassia identified Petitioner as the gunman, he admitted at

trial he was in shock during the incident, which is unsurprising given the fact that he was also

fired upon.  (T at 235, 259).

Any additional evidence tending to show that Jamie Thompson was the killer would

have been extremely helpful to the defense, particularly when such evidence was testimony from two individuals with no apparent motive to lie concerning a confession by Thompson. Indeed, this Court finds that the admission of this additional exculpatory evidence would have created a reasonable doubt that arguably may not have existed otherwise.

"Few rights are more fundamental than that of an accused to present witnesses in his own defense." Chambers, 410 U.S. at 302. In this case, the state court's rejection of highly probative and exculpatory testimony, which bore substantial indicia of reliability, denied the Petitioner "a trial in accord with traditional and fundamental standards of due process." Id.

Both the trial court and the Appellate Division mechanistically applied New York's hearsay rule in affirming the exclusion of the testimony at issue. The Appellate Division's decision in this regard, which contains no citation to Chambers or discussion of due process, was contrary to clearly established federal law, as determined by the Supreme Court of the United States. Moreover, it appears that the Appellate Division misread the record concerning the contemporaneous objection rule.

Accordingly, it is recommended that the Amended Petition be GRANTED on the basis of this claim.

### 2.    Prosecutorial Misconduct

In his second claim for habeas relief, Petitioner argues that the prosecutor engaged in misconduct by making inflammatory and improper statements during his opening and closing statements. Although this Court finds that many of the prosecutor's statements were improper, this particular claim is procedurally barred.

24

The Appellate Division concluded that Petitioner had failed "to preserve for review his contention that he was deprived of a fair trial by prosecutorial misconduct, including instances in which the prosecutor allegedly vouched for the credibility of witnesses and denigrated the defense." Wright, 703 N.Y.S.2d at 782.

Unlike the exculpatory witness issue discussed above, Petitioner's trial counsel indisputably failed to make a contemporaneous objection to any portion of the prosecutor's opening and closing statements.  Indeed, Petitioner's appellate counsel conceded this point. (Defendant's Brief to the Appellate Division, at p. 26; Defendant's Reply Brief to the Appellate Division, at p. 4).

As such, because the application of the contemporaneous objection rule in this particular instance had an adequate basis in state law, the Appellate Division's ruling constitutes an adequate and independent state ground and the claim is procedurally barred. See Hogan v. West, 448 F. Supp.2d 496, 505 (W.D.N.Y. 2006).

Further, Petitioner has not demonstrated cause for the default[16] or that failure to review the claim will result in a fundamental miscarriage of justice.[17]  Due to this procedural bar, this Court must conclude that Petitioner is not entitled to habeas relief based upon the alleged prosecutorial misconduct.

---

[16]This Court would be inclined to conclude that trial counsel's failure to object to some of the prosecutor's improper statements constituted ineffective assistance of counsel.  However, the ineffective assistance of counsel may only constitute "cause" sufficient to overcome a procedural bar where the ineffective assistance claim is itself not procedurally barred.  See Murray v. Carrier, 477 U.S. 478, 488-89 (1986) ("[E]xhaustion doctrine ... generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default."). For the reasons set forth infra in Section III.B.7, Petitioner's claim of ineffective assistance claim is itself procedurally barred and therefore cannot serve as cause sufficient to overcome the procedural bar.

[17]As discussed infra in Section III.B.7, Petitioner has not demonstrated actual, factual innocence, which is necessary to excuse a procedural bar based upon a fundamental miscarriage of justice theory.

### 3.     Judicial Misconduct

In his third claim for relief, Petitioner argues that misconduct by the trial court deprived him of a fundamentally fair trial.  Specifically, Petitioner alleges (a) that the court engaged in improper and impermissible questioning of Ciro Raspante, a prosecution witness; (b) that the court, *sua sponte*, provided prejudicial instructions to the jury regarding Petitioner's involvement in the assault of Crouse and robbery of his bicycle, which occurred prior to the shooting; and (c) that the trial court erred by allowing the prosecution to "delve into" the details of the robbery/assault during the trial.

Concerning this claim, the Appellate Division concluded as follows: "Defendant failed to preserve for our review his contentions that the conduct of County Court denied him a fair trial . . . ." Wright, 703 N.Y.S. 2d at 782.  In support of this conclusion, the court cited the contemporaneous objection rule.  Id. (citing CPL § 470.05 (2)).

As with the prosecutorial misconduct claim, Petitioner's appellate counsel conceded that no contemporaneous objection was interposed with respect to the alleged judicial misconduct. (Defendant's Brief to the Appellate Division, at p.33).

Accordingly, because the application of the contemporaneous objection rule in this particular instance has an adequate basis in state law, the Appellate Division's ruling constitutes an adequate and independent state ground and the claim is procedurally barred.  Further, Petitioner has not demonstrated cause for the default or that failure to review the claim will result in a fundamental miscarriage of justice.  Due to this procedural bar, this Court must conclude that Petitioner is not entitled to habeas relief based upon the alleged judicial misconduct.

### 4.      Erroneous Admission of Hearsay Evidence

In his fourth claim for relief, Petitioner asserts that the trial court erred by permitting the prosecution to elicit hearsay testimony from Gabriel Ingrassia during redirect examination.  However, once again, no objection was lodged at trial with respect to this issue. (T at 255-56).  The Appellate Division concluded that Petitioner failed to preserve his claim that the trial court "erred in admitting certain evidence."  Wright, 703 N.Y.S. 2d at 782 (citing CPL § 470.05 (2)).  This claim is therefore procedurally barred and habeas corpus review cannot be granted.  Petitioner has not demonstrated cause for the default or that failure to review the claim will result in a fundamental miscarriage of justice. Due to this procedural bar, this Court must conclude that Petitioner is not entitled to habeas relief based upon the alleged erroneous admission of hearsay evidence.

In any event, the testimony at issue was brief and related to a collateral matter (*i.e.*, whether an investigator hired by the defense falsely represented to Ingrassia that he had been appointed by the trial judge).  Also, it is not clear that the statement at issue constituted hearsay, as it was arguably not being offered for the truth of the matter asserted therein.


### 5.      Improper Admission of Autopsy Report

In his fifth claim for relief, Petitioner argues that the trial court improperly permitted the prosecutor to read into evidence the portion of the autopsy report containing the cause of death.  Respondent completely failed to address this claim in his memorandum of law in opposition.

The Appellate Division also did not specifically address this issue.  However, as

27

noted above, the court did conclude that Petitioner had not preserved for review claims that the trial court "erred in admitting certain evidence."  Wright, 703 N.Y.S. 2d at 782 (citing CPL § 470.05 (2)).  Arguably, this holding was intended to include, by implication, Petitioner's claim that the trial court improperly allowed the prosecutor to read into evidence the portion of the autopsy report containing the cause of death.

However, to the extent that the Appellate Division concluded that this claim was defaulted based upon the contemporaneous objection rule, its conclusion does not have an adequate basis under state law and was clearly erroneous.  To wit, defense counsel lodged an objection to the reading of the autopsy report at trial, arguing that the reading was duplicative, bolstering, and potentially prejudicial. (T at 683-684).

In light of the foregoing, this Court finds that Petitioner's trial counsel unmistakably "made his position . . . known to the court" with sufficient specificity, given the realities of trial, to allow the court to respond and address the issue, as required under the contemporaneous objection rule. See CPL § 470.05 (2); Sanford, 334 F.Supp.2d at 298-300.  As such, this Court finds that the procedural bar cited by the Appellate Division was not adequate to preclude federal habeas review of the merits of Petitioner's claim regarding the autopsy report.

Turning to the merits of the claim, the relevant facts are as follows: The medical examiner who performed Crouse's autopsy was unavailable to testify at trial. (T at 682-683).  As such, the written autopsy report was received into evidence by stipulation of the parties. (T at 683).  At the close of his case-in-chief, the prosecutor indicated that he planned to "publish" the report to the jury by reading the same out loud.  (T at 683).  Petitioner's trial counsel advised the Court that, while he had no objection to the admission

28

of the autopsy report into evidence, he objected to the reading of the same to the jury. (T at 683-84).  The trial court overruled the objection and permitted the prosecutor to read the report into evidence. (T at 684, 689-701).  As part of that reading, the prosecutor indicated that the report read "Manner of death: Homicide." (T at 690).  Almost immediately thereafter, the trial court interrupted the reading and gave the following limiting instruction:

> I'm going to interrupt.  Dr. Wolf indicated a manner of death, homicide.  That's a determination for you to determine, not Barbara Wolf.  That's for you, after all the evidence and testimony.  My legal instruction is for you to determine whether it was a homicide or not.

(T at 690).

It is clear that the admission of the medical examiner's opinion regarding the cause of death into evidence was error.  Under New York law, "while the autopsy findings are admissible to establish the primary facts stated therein, opinions as to the cause of death contained in such report are not admissible."  People v. Violante, 534 N.Y.S.2d 281, 283 (4th Dep't 1988); see also  People v. Hampton, 327 N.Y.S.2d 961, 962 (3d Dep't 1972)("An autopsy report is . . . a public record and, therefore, admissible. Our courts, however, have not extended the rule to include opinions as to the cause of death contained in such reports.").

However, even where there has been an evidentiary error, the habeas court must still determine whether the error "was harmless beyond a reasonable doubt." Rosario v. Kuhlman, 839 F.2d 918, 924 (2d Cir. 1988) (citing Chapman v. California, 386 U.S. 18, 22-24, 87 S.Ct. 824, 827-28, 17 L.Ed.2d 705 (1967)).

Unlike the erroneous exclusion of McClain and Leggett's testimony, which was highly

29

prejudicial, this Court finds that the erroneous admission of the cause of death portion of the autopsy report was harmless beyond a reasonable doubt.

First, the admissible portions of the report clearly demonstrated that Crouse died from a gunshot wound. (T at 694-696).   This fact alone strongly suggests that the error was harmless. See Tucker v. Bennett, 219 F. Supp. 2d 260, 267 (E.D.N.Y. 2002).

Second, there was no genuine dispute regarding the fact that Crouse's death was a homicide.   This was not a case where the defense was arguing that the death was accidental.   Rather, the defense theory was that someone else had murdered Crouse.   As such, the admission into evidence of the medical examiner's finding that the cause of death was homicide, while technically improper was not prejudicial to the defense.   Indeed, it was consistent with their defense theory.

Lastly, any arguable prejudice was quickly cured when the trial court interrupted the prosecutor and provided a clear limiting instruction. (T at 690).   The Supreme Court has emphasized that prejudice "can be cured with proper instructions and juries are presumed to follow their instructions." Zafiro v. United States, 506 U.S. 534, 540-41 (1993) (internal quotation marks omitted); see also United States v. Downing, 297 F.3d 52, 59 (2d Cir.2002) (stating that "[a]bsent evidence to the contrary, we must presume that juries understand and abide by a district court's limiting instructions.").

In light of the foregoing, this Court finds that Petitioner is not entitled to habeas relief based upon this claim.

### 6.    Sufficiency/Weight of the Evidence

In his sixth claim for relief, Petitioner argues (a) that the evidence at trial was

insufficient to sustain the jury's finding as to the attempted murder of Ingrassia and (b) that the entire verdict was against the weight of the evidence.  With respect to the former claim, Respondent fails to offer any factual arguments in opposition.  As to the latter claim, Respondent provides the conclusory assertion that "there is certainly support" in the trial court record for the jury's verdict.  (Respondent's Memorandum of Law, Docket No. 11, at p. 23).

### a.      Sufficiency of Evidence Regarding Attempted Murder of Ingrassia

A habeas petitioner challenging the sufficiency of the evidence bears "a very heavy burden."  Ponnapula v. Spitzer, 297 F.3d 172, 179 (2d Cir.2002) (quotation marks omitted); Einaugler v. Supreme Court of New York, 109 F.3d 836, 840 (2d Cir.1997) (quotation marks omitted).  A habeas challenge to the sufficiency of the evidence "does not require a court to 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'"  Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781 (1979) (quoting Woodby v. INS, 385 U.S. 276, 282, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966)).  Rather, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Id. (emphasis in original).

Thus, a habeas court must uphold a conviction unless, upon the record evidence adduced at trial, no rational trier of fact could have found that the prosecution established the defendant's guilt beyond a reasonable doubt. See id.; accord Ponnapula, 297 F.3d at 179 ("[W]e review the evidence in the light most favorable to the State and [hold that] the applicant is entitled to habeas corpus relief only if no rational trier of fact could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial.").

31

In the present case, there was no dispute regarding the fact that the shooter fired at least one shot into the passenger side of the windshield, where Ingrassia was seated. Petitioner argues that his conviction for attempting to murder Ingrassia was improper because there was no evidence that the shooter could actually see into the interior of the vehicle. As such, Petitioner, while denying he was the shooter, argued in the alternative that there was insufficient evidence to support the jury's finding that he possessed the requisite intention to murder Ingrassia.

The Appellate Division concluded that the conviction was "supported by legally sufficient evidence." Wright, 703 N.Y.S.2d at 782. Upon habeas review, this Court finds that, given the posture of the evidence and the trial court's rulings thereon, Petitioner has not met his "very heavy burden" of showing that no rational trier of fact could have found that the prosecution established his guilt beyond a reasonable doubt with respect to this particular count of the indictment.

Petitioner's argument is based primarily upon testimony of Alexander Thompson. Mr. Thompson testified that the vehicle in question had tinted windows and, as such, "you couldn't see" whether anyone was inside. (T at 390-91). Petitioner accordingly suggests that it would have been impossible for him (or anyone else) to see Ingrassia sitting in the passenger seat.

However, Mr. Thompson referred to the vehicle having tinted *windows*, not a tinted windshield. (T at 390-91). A rational trier of fact could have concluded that Mr. Thompson's reference to tinted "windows" was not intended to indicate that the windshield was also tinted. Moreover, notwithstanding his statement that "you couldn't see" into the car, Thompson also testified that "there was people in the car," indicating that it was possible for

32

a person standing outside of the vehicle to know that it was occupied.  (T at 391).  In addition, Thompson stated that the car moved toward him during the incident, while Crouse was seated on the hood, providing further evidence that the vehicle was occupied by at least one person other than Crouse. (T at 394).

In addition, given that the shooter indisputably fired into the windshield of a vehicle that had recently been moving, a rational trier of fact could infer from such conduct that the shooter was acting with the intention of killing one of the vehicle's occupants. See People v. Bundy, 654 N.Y.S.2d 108, 109 (1st Dep't 1997) ("A verdict is supported by sufficient evidence as long as 'there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence and as a matter of law satisfy the proof and burden requirements for every element of the crime charged.'") (quoting People v. Bleakley, 515 N.Y.S.2d 761, 763 (1987)); Loving v. People of State of New York, CV-04-1284, 2007 WL 1825401, at *7 (E.D.N.Y. June 21, 2007) ("Ultimately, so long as the evidence at trial establishes 'any valid line of reasoning and permissible inferences [that] could lead a rational person' to convict, then the conviction will survive sufficiency review.").

### b.    Weight of the Evidence

Petitioner also contends that the entire jury verdict was against the weight of the evidence.   In support of this argument, Petitioner notes the serious and numerous inconsistencies in the prosecution's evidence.  As noted above, Respondent asserts, without any accompanying factual citation or argument, that a review of the trial record indicates that there is "certainly" support for the verdict.

A claim that a jury verdict was against the weight of the evidence is purely a state law claim.  Specifically, such a claim is based upon § 470.15(5) of the New York Criminal Procedure Law, which permits an appellate court in New York to reverse or modify a conviction where it determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence."

Thus, a "weight of the evidence" argument is a state law claim grounded in the criminal procedure statute.  In contrast, a claim challenging the legal sufficiency of the evidence  is based on federal due process principles. Bleakley, 69 N.Y.2d at 495.  Since a "weight of the evidence claim" is purely a matter of state law, it is not cognizable on habeas review. See 28 U.S.C. § 2254(a) (permitting federal habeas corpus review only where the petitioner has alleged that he is in state custody in violation of "the Constitution or a federal law or treaty"); Estelle v. McGuire, 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

Federal courts routinely dismiss claims attacking a verdict as against the weight of the evidence on the basis that they are not federal constitutional issues cognizable in a habeas proceeding. See, e.g., Ex parte Craig, 282 F. 138, 148 (2d Cir.1922) (holding that "a writ of habeas corpus cannot be used to review the weight of evidence ..."), aff'd, 263 U.S. 255, 44 S.Ct. 103, 68 L.Ed. 293 (1923); Garrett v. Perlman, 438 F.Supp.2d 467, 470 (S.D.N.Y.2006) (same); Douglas v. Portuondo, 232 F.Supp.2d 106, 116 (S.D.N.Y.2002) (same); Garbez v. Greiner, No. 01Civ.9865(LAK)(GWG), 2002 WL 1760960, at *8 (S.D.N.Y. July 30, 2002) ("[B]y raising a 'weight of the evidence' argument, [petitioner] does not present to this Court a federal claim as required by 28 U.S.C. § 2254(a). Instead, [petitioner]

raises an error of state law, which is not available for habeas corpus review."); Lemons v. Parrott, 01 Civ. 9366, 2002 WL 850028, at *3 (S.D.N.Y. May 2, 2002) ("[W]e have no authority to review a weight of the evidence argument because it is a state law claim.").

However, in keeping with the principle that *pro se* petitioners' complaints are to be considered liberally in their favor, Haines v. Kerner, 404 U.S. 519, 520 (1972), this Court will construe Petitioner's claim to be a "sufficiency of the evidence" argument. See Davis v. McLaughlin, 122 F.Supp.2d 437, 441 (S.D.N.Y.2000) (treating petitioner's claim that his conviction was against the weight of the evidence and that the prosecution did not prove his guilt beyond a reasonable doubt as "legal sufficiency" claim); Wilson v. Senkowski, No. 02 Civ. 0231(HB)(AJP), 2003 WL 21031975, at *8 (S.D.N.Y. May 7, 2003) (denying "weight of the evidence-claim as not cognizable on federal habeas review but also "broadly interpret[ing]" petitioner's "weight of the evidence" claim to raise a "sufficiency of evidence claim") (citing McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir.1999)).

As noted above, a habeas petitioner challenging the sufficiency of the evidence bears "a very heavy burden" and must show that no rational trier of fact could have found that the prosecution established the defendant's guilt beyond a reasonable doubt. Ponnapula, 297 F.3d at 179; Jackson, 443 U.S. at 318-19.

The prosecution offered eyewitness testimony indicating that Petitioner was the shooter. (T 210-14, 285, 337-40, 401-402, 467-71). Although this testimony contained numerous and serious inconsistencies, to say the least, this Court is not permitted to "disturb the jury's findings with respect to the witnesses' credibility," United States v. Roman, 870 F.2d 65, 71 (2d Cir.1989), nor make its own "assessments of the weight of the evidence[.]" Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir.1996). Under this standard, a

35

"federal habeas court faced with a record of historical facts that supports conflicting inferences must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'"  Wheel v. Robinson, 34 F.3d 60, 66 (2d Cir.1994) (quoting Jackson, 443 U.S. at 326, 99 S.Ct. 2781).

As such, this Court finds that Petitioner is not entitled to habeas relief based upon his claim regarding the sufficiency of the evidence.  Thus, given the evidence presented at trial, this Court finds that a rational trier of fact could have concluded that Petitioner was guilty of the crimes charged.  However, it must be noted that the sufficiency of the evidence is distinct from the question of whether Petitioner was afforded due process and received a fundamentally fair trial.  For the reasons discussed above in Section III.B.1, while the evidence introduced at trial was sufficient to the extent that a rational trier of fact could have found Petitioner guilty, this Court finds that Petitioner was improperly deprived of his right to present a defense and thus did not receive a fundamentally fair trial.

### 7. Ineffective Assistance of Trial Counsel

Petitioner's seventh and final claim for habeas relief alleges that his trial counsel was ineffective.  Specifically, Petitioner argues that trial counsel improperly failed to preserve the foregoing six (6) claims for review by the Appellate Division.

Again, without any supporting factual citations or references, Respondent generically opposes this claim with the simple and not entirely relevant assertion that defense counsel "made appropriate motions, objections and legal arguments, presenting evidence, effectively

cross-examining the People's witnesses, presenting a coherent and viable defense." (Respondent's Memorandum of Law, Docket No. 11, at p. 24).  Respondent offers no substantive response to Petitioner's claim that his trial counsel failed to properly preserve issues for appellate review.

Petitioner did not raise a claim of ineffective assistance of trial counsel on direct appeal to the Appellate Division.  Rather, the claim was raised for the first time in Petitioner's *pro se* motion pursuant to CPL § 440.  The trial court denied that motion in a Decision and Order dated May 9, 2001, pursuant to CPL § 440.10 (2)(c).

CPL § 440.10 (2)(c) provides for denial of a § 440 motion when "[a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him." Petitioner applied for leave to appeal the trial court's decision to the Appellate Division, which denied leave to appeal on December 13, 2001.

As noted above, when a petitioner "defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is [generally] barred . . . ." Coleman, 501 U.S. at 750.  The Second Circuit has determined that a denial based upon CPL § 440.10 (2) constitutes an adequate and independent state law ground.   See Sweet v. Bennett, 353 F.3d 135, 141 (2d Cir. 2003); Levine v. Commissioner of Correctional Services, 44 F.3d 121, 126 (2d Cir.1995).

In the present case, the ruling of the state courts concerning this issue had an

adequate basis in state law.  To wit, the alleged errors of trial counsel were apparent from the trial record.  Indeed, as discussed above, Petitioner's appellate counsel conceded in her brief and reply brief that trial counsel had failed to object and preserve many of the issues for appeal.

As such, Petitioner's ineffective assistance of counsel claim is procedurally barred by virtue of his failure to raise that claim on direct appeal. See  Maisonet v. Conway, No. CV-04-2860, 2007 WL 2027323, at *3-*4 (E.D.N.Y. July 10, 2007) ("[A]lthough the evidence of trial counsel's allegedly deficient performance was available on the trial record, Petitioner failed to raise the claim on direct appeal and it is accordingly barred."); Taylor v. Kuhlmann,  36 F. Supp.2d 534, 545 n.9 (E.D.N.Y.1999) (noting that "where the claimed instances of trial counsel error are matters to which the record is already clear, the claim can be reviewed by the appellate court and should be raised on direct appeal, . . . and the failure to do so is a procedural default") (internal citations omitted); see also Garcia v. Scully, 907 F. Supp. 700, 706 (S.D.N.Y.1995).

Given that the state court's finding in this regard had an adequate basis under state law, Petitioner may overcome the procedural bar only by showing either (1) cause for the default and prejudice or (2) a fundamental miscarriage of justice.  Coleman, 501 U.S. at 750. The only arguable cause for Petitioner's procedural default would be appellate counsel's failure to raise the ineffective assistance of counsel claim on direct appeal.

In light of the fact that appellate counsel clearly recognized trial counsel's failure to properly preserve several viable issues for appellate review, it is difficult for this Court to understand why appellate counsel did not raise an ineffective assistance of trial counsel claim on direct appeal.  However, Petitioner has not asserted a claim before this Court based upon

ineffective assistance of appellate counsel.  Moreover, there is no indication in the record that Petitioner ever raised such a claim before the state courts.

Accordingly, although the ineffectiveness of Petitioner's appellate counsel would likely have constituted cause sufficient to overcome the procedural bar, it cannot be considered by the Court due to Petitioner's failure to make such a claim before either the state courts or this Court.  See Reyes v. Keane, 118 F.3d 136, 140 (2d Cir. 1997) (holding that "a petitioner may not bring an ineffective assistance claim as cause for a default when that ineffective assistance claim itself is procedurally barred") (citing Murray v. Carrier, 477 U.S. 478, 488-89 (1986)); see also  Maisonet, 2007 WL 2027323, at *4 n. 21;

Lastly, it must be noted that, for the reasons discussed above in connection with Petitioner's due process claim, this Court has serious questions about the jury's verdict given the denial of Petitioner's right to a fundamentally fair trial.  However, while this Court believes that Petitioner is entitled  to a new trial based upon the deprivation of due process, Petitioner has not demonstrated actual, factual innocence.[18]  Such a demonstration is required if a procedural default is to be excused based upon a fundamental miscarriage of justice.  Dixon v. Miller, 293 F.3d 74, 81 (2d Cir. 2002).

Accordingly, this Court finds that Petitioner is not entitled to habeas relief based upon ineffective assistance of counsel because that claim is procedurally barred.

---

[18]This Court's finding as to this issue should *not* be interpreted as suggesting that Petitioner's guilt was established beyond a reasonable doubt.  As discussed above, this Court has serious questions in this regard, particularly when considering the record as a whole and including the erroneously excluded exculpatory testimony.

## IV. CONCLUSION

For the foregoing reasons, it is recommended that the Amended Petition for habeas corpus relief (Docket No. 6) be conditionally GRANTED based upon the violation of Petitioner's due process rights.  Specifically, it is recommended that the Amended Petition be granted and that the State of New York be directed to immediately vacate Petitioner's conviction.  It is further recommended that the State be ordered to release Petitioner from custody within thirty (30) days from the entry of an Order adopting or approving this Report and Recommendation, "unless New York State has, by that point, taken concrete and substantial steps expeditiously to retry" Petitioner.  <u>Pavel v. Hollins</u>, 261 F.3d 210, 229 (2d Cir. 2001).

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

DATED:      July 31, 2007

Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.[19]

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were*

---

[19]According to the New York State Department of Correctional Services' official website, Petitioner is presently incarcerated in the Shawangunk Correctional Facility, therefore, the correct Respondent is Joseph Smith, the Superintendent of the Shawangunk Correctional Facility. 28 U.S.C. § 2243. In light of Petitioner's *pro se* status, the fact that this will not prejudice Respondent, and in the interests of court efficiency, this Court will deem the Petition amended to change the name of Respondent to Joseph Smith.

The Clerk of the Court is directed to terminate George Duncan as Respondent, add Joseph Smith, Superintendent of the Shawangunk Correctional Facility, as the new Respondent, and revise the caption of this case accordingly.

*not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).


SO ORDERED.

July 31, 2007

_____
Victor E. Bianchini
United States Magistrate Judge