UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DESHARD WRIGHT,

                    Petitioner,

          V.

GEORGE DUNCAN,

                    Respondent.

_____

**SUPPLEMENTAL REPORT AND
RECOMMENDATION**

02-CV-508
(GLS/VEB)

## I. INTRODUCTION

On July 31, 2007, this Court issued a Report and Recommendation (Docket No. 26) recommending that Deshard Wright's Amended Petition for habeas corpus relief be conditionally granted based upon a violation of his due process rights.  Respondent filed Objections to the Report and Recommendation on September 20, 2007.  (Docket No. 29). Respondent asserted several arguments in his Objections regarding the merits of Petitioner's due process claim that were not previously raised before this Court.

On March 18, 2008, the Honorable Gary L. Sharpe, United States District Judge, issued an Order referring the matter to this Court for a supplemental or amended Report and Recommendation addressing the issues advanced by Respondent for the first time in his Objections.  (Docket No. 30).

This Supplemental Report and Recommendation is submitted in response to the District Court's Order and, combined with the previously filed Report and Recommendation, constitutes this Court's analysis and recommendation regarding the issues presented in this case.

## II. BACKGROUND

### A.    Factual Background

Familiarity with this Court's Report and Recommendation is presumed.  The facts and procedural background may briefly be summarized as follows: On or about November 2, 1995, Robert Crouse, a white teenager, was shot and killed in Utica, New York. Petitioner, an African-American man, was charged with the murder.

At the subsequent  trial of Petitioner, the defense's theory of the case was that Petitioner was not the shooter, but that Crouse was murdered by one of Petitioner's companions, Jamie Thompson.[1]  This defense was based, *inter alia*, upon the statements provided to the police by two eyewitnesses shortly after the shooting (including a positive photo array identification of Thompson as the shooter), as well as the fact that Crouse's bicycle was found in Thompson's home and a black knit cap matching a description by the eyewitnesses had been found during a search of Thompson's bedroom.[2]

Petitioner's trial counsel also attempted to support the defense by offering testimony from two additional witnesses, Reggie Leggett and Ezekiel McClain.  According to counsel's offer of proof, Leggett, an inmate in the Oneida County Jail, was prepared to testify that Jamie Thompson confessed to shooting Crouse.  McClain, another inmate, would have testified that he overheard the conversation between Thompson and Leggett. The trial court refused to allow the testimony of either Leggett or McClain, ruling that their

---

[1]As set forth in the original Report and Recommendation, Jamie Thompson, Petitioner's companion, was the first person charged with Crouse's murder and he remained charged and in custody for the murder until some time after Petitioner's trial had ended.

[2]At least two eyewitnesses described the shooter as wearing a black knit cap.

testimony was hearsay.  Defense counsel argued that the testimony was admissible as a declaration against penal interest, but the trial court rejected that argument because Petitioner had not shown that Jamie Thompson was "unavailable" to testify, as required for that exception to apply under New York's hearsay rule.  Petitioner's trial counsel noted an exception to the trial court's ruling and further stated that the ruling resulted in "unfairness" to his client.  Petitioner was ultimately convicted on all charges, including the murder of Robert Crouse.

## B.    State Court Determination of Due Process Claim

On direct appeal, Petitioner argued, *inter alia*, that the trial court's exclusion of the testimony of Leggett and McClain was erroneous as a matter of state law and, in the alternative, that, notwithstanding any hearsay issue, the exclusion of the exculpatory testimony violated his due process right to a fundamentally fair trial, as recognized by the United States Supreme Court in Chambers v. Mississippi, 410 U.S. 284, 294 (1973).

The Appellate Division, Fourth Department affirmed the conviction, finding that Petitioner had failed to preserve the hearsay issue for appeal and, in any event, had not demonstrated that the testimony was admissible under the "declaration against penal interest" hearsay exception.   People v.Wright, 703 N.Y.S.2d 782 (4th Dep't 2000).  Additionally, the New York Court of Appeals denied Petitioner the right to appeal.  In its opinion, the Appellate Division did not mention Petitioner's due process claim and did not cite or discuss Chambers.

## C.    Petition for Habeas Relief and Respondent's Initial Opposition

Petitioner, acting *pro se*, commenced this case on April 11, 2002, by filing a Petition

for habeas corpus relief.  (Docket No. 1).  Petitioner filed an Amended Petition on May 24, 2002.  (Docket No. 6).  The Amended Petition raises several claims, all of which were reviewed and analyzed in this Court's Report and Recommendation.[3]  Respondent's Objections only related to this Court's determination with regard to Petitioner's first claim. Accordingly, for purposes of this Supplemental Report and Recommendation, the only claim at issue is the first claim for relief, in which Petitioner asserts that he was deprived of his due process right to a fundamentally fair trial when the trial court refused to permit the jury to hear and consider the exculpatory testimony of Leggett and McClain.[4]

In his initial opposition to the Amended Petition, Respondent offered a single argument in opposition to Petitioner's due process claim, namely, that the claim was procedurally barred.  Specifically, Respondent relied exclusively upon the Appellate Division's finding that the hearsay claim had not been preserved for their review and argued that the state court's finding as to that issue constituted an adequate and independent state law ground barring federal habeas review of the due process claim.

Significantly, Respondent's argument in opposition to Petitioner's due process claim consisted solely of a general discussion regarding procedurally barred claims, without *any* citations to the trial record or arguments related to the merits of the claim. (Respondent's Memorandum of Law, Docket No. 11, at p. 10-15).

**D.     Report and Recommendation**

_____

[3]Petitioner raised a total of seven (7) claims in his Amended Petition.  For the reasons stated in the Report and Recommendation, this Court found that Petitioner was entitled to relief as to his first claim, which alleged a due process violation, but concluded that the remaining six (6) claims were procedurally barred or otherwise did not warrant relief.

[4]Petitioner did not object to the portions of the Report and Recommendation finding that he was not entitled to habeas relief based upon his other six claims.

In the Report and Recommendation filed on July 31, 2007, this Court found that Petitioner's due process rights were violated by the exclusion of the exculpatory testimony of Leggett and McClain.  As noted above, familiarity with that Report and Recommendation, which is briefly summarized herein, is presumed.

In sum, this Court found that Petitioner's due process claim was not procedurally barred because his trial counsel, as discussed extensively in the Report and Recommendation, substantially complied with the applicable state procedural rule and, as such, the procedural bar asserted by the state court did not preclude federal habeas review.

Turning to the merits of the due process claim, this Court concluded that while the testimony of Leggett and McClain might have been technically inadmissible hearsay under New York law, the state courts erred by failing to consider whether the testimony should nevertheless have been admitted under the standard articulated by the Supreme Court in Chambers.

To wit, the testimony in question was of extreme probative value and had substantial indicia of reliability, as there were no incentives or rewards available to Leggett or McClain and no apparent motive on the part of either man to falsify their testimony by offering to testify on behalf of Petitioner .  Accordingly, constitutional due process, as defined by the United States Supreme Court in Chambers, demanded that the defense be allowed to present the testimony even if it was otherwise inadmissible under a rigid or mechanistic application of New York's hearsay rule.  As such, this Court concluded that habeas relief was warranted because the Appellate Division's decision, which did not cite Chambers or even discuss the fundamental constitutional right to due process, was contrary to clearly

established federal law, as determined by the Supreme Court of the United States.

## III. DISCUSSION

On September 20, 2007, Respondent filed Objections to this Court's Report and Recommendation. (Docket No. 29).  Respondent raises two main objections to this Court's findings.  First, Respondent contends that this Court erred when it concluded that Petitioner's due process claim was not procedurally barred.  Second, Respondent argues that, in any event, the due process claim fails on its merits because Petitioner cannot establish that the exclusion of the exculpatory testimony deprived him of a fundamentally fair trial.

As noted in the March 18, 2008 Order, the arguments offered by Respondent concerning the merits of the due process claim were raised for the first time in the Objections to the Report and Recommendation.  Prior to filing the Objections, Respondent had relied solely on the procedural bar argument, electing not to address the substance of Petitioner's due process claim.

For the reasons outlined below, this Court recommends, as a threshold matter, that the newly raised arguments not be considered by the District Court.[5] However, even if the District Court is inclined to permit Respondent to raise arguments for the first time in Objections, the Court recommends rejecting those arguments because the Appellate Division's decision was contrary to clearly established federal law, as determined by the Supreme Court of the United States.

---

[5]In its March 18th Order, the District Court indicated that it had not yet decided whether it would consider the newly raised arguments.

**A.      Respondent's Newly Raised Arguments Should Not be Considered.**

As with virtually all habeas corpus petitions filed in the federal district courts located in New York, Respondent is represented by the Office of the Attorney General of the State of New York.[6]

There can be no doubt that the Attorney General's Office is well aware of the long standing and well-established rule applied by courts throughout this Circuit that, on *de novo* review, the district court will ordinarily refuse to consider arguments, case law and/or evidentiary material that could have been, but were not, presented to the Magistrate Judge in the first instance. See, e.g., Torres v. Burge, 01-CV-1337(GLS/VEB), 2007 WL 625982, at *6 (N.D.N.Y. Feb. 23, 2007); Booth Oil Site Administrative Group v. Safety-Kleen Corp., 532 F.Supp.2d 477, 522 (W.D.N.Y. 2007);  Crown Heights Jewish Community Council, Inc. v. Fischer, 63 F.Supp.2d 231, 235 (E.D.N.Y. 1999); Baker v. Ace Advertisers' Service, Inc., 153 F.R.D. 38, 43 (S.D.N.Y.1992).

The reason for this rule is simple and straightforward – allowing parties to raise new arguments in Objections to a Report and Recommendation "unduly undermine[s] the authority of the Magistrate Judge by allowing litigants the option of waiting until a Report is issued to advance additional arguments." Edwards v. Fischer, 414 F. Supp. 2d 342, 352 (S.D.N.Y. 2006) (quoting Abu-Nassar v. Elders Futures, Inc, 1994 WL 445638, at *5 n. 2 (S.D.N.Y. Aug. 17, 1994)); see also Nolasco v. United States, 358 F.Supp.2d 224, 231 (S.D.N.Y. 2004) ("A party may not raise an objection to an issue it never brought before the

---

[6]The original submissions in opposition to the Amended Petition were filed by G. Lawrence Dillon, Esq., of the Attorney General's Office.  After this Court's Report and Recommendation was issued, Attorney Dillon was replaced as the lead attorney of record by Thomas B. Litsky, Esq., Assistant Attorney General.  (Docket No. 27).  Attorney Litsky prepared and filed the Objections, along with Assistant Attorney General Alyson J. Gill, Esq.

Magistrate Judge."); <u>Galvin v. Kelly</u>, 79 F.Supp.2d 265, 267 (W.D.N.Y. 2000) ("The objecting party . . . may not raise arguments not priorly submitted for the magistrate judge's consideration."); <u>Henrietta D. v. Giuliani</u>, No. 95 CV 0641, 2001 WL 1602114, at *3 (E.D.N.Y. Dec. 11, 2001) ("An objecting party may not raise new arguments that were not made before the Magistrate Judge.").

The important policy underlying this rule has been succinctly summarized as follows:

> Systemic efficiencies would be frustrated and the magistrate's role reduced to that of a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round. In addition, it would be fundamentally unfair to permit a litigant to set its case in motion before the magistrate, wait to see which way the wind was blowing, and-having received an unfavorable recommendation-shift gears before the district judge.

<u>Glover v. New York City Transit Authority</u>, No. 03 CV 1140, 2006 WL 3083495, at *1 (E.D.N.Y. Oct. 20, 2006) (quoting <u>Paterson-Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co.</u>, 840 F.2d 985, 991 (1st Cir.1988)).

Respondent's original submissions relied solely upon the argument that the due process claim was procedurally barred.   Respondent asserted no arguments concerning the merits of the claim and neither cited <u>Chambers</u> nor discussed whether the facts of this particular case fit within the <u>Chambers</u> framework.

The section in Respondent's opposing memorandum of law concerning Petitioner's due process claim contains a general discussion of the law governing procedurally barred claims, without a *single* citation to case law concerning due process claims or the exclusion of exculpatory evidence.  The section contains no supporting citations to the trial transcript and, indeed, the words "due process" do not appear on any of the five pages devoted to this claim in Respondent's memorandum of law. (Docket No. 11, at p. 10-15 ).

In contrast, Respondent's Objections to the Report and Recommendation contain, for the first time, detailed discussion and arguments concerning <u>Chambers</u>, along with numerous citations to the trial transcript in support of Respondent's argument concerning the merits of the due process claim.  Respondent makes no attempt in the Objections to explain, excuse, or justify its complete failure to raise these arguments in the proceedings before this Court.

It is respectfully submitted that the District Court should adhere to the well-established rule and decline to consider arguments advanced for the first time in Respondent's Objections.  Respondent made a tactical decision to rely solely upon the purported procedural bar in the proceedings before this Court.  As noted above, Respondent's counsel is not by any means an inexperienced or infrequent practitioner either in federal court generally or in the area of habeas corpus law specifically, quite the contrary.

Respondent should accordingly not be permitted to wait until after this Court spent significant time and effort preparing a lengthy Report and Recommendation to raise new arguments for the first time before the District Court, particularly where, as here, Respondent has offered (and can offer) no explanation or excuse for such conduct. Permitting such tactics seriously risks undermining the important role of magistrate judges by allowing parties to hold arguments in reserve and then "shift gears" based upon the magistrate's ruling.  However, even if the District Court were inclined to permit consideration of Respondent's new arguments, their position concerning the deprivation of due process is meritless.  Thus, the Court  recommends that Respondent's new arguments, if the District Court is inclined to consider them, be rejected on the merits for the reasons that follow.

**B.      Respondent's Objections are Meritless Should be Denied.**

        **1.      Procedural Bar**

Respondent contends that habeas review of the due process claim was not permitted because the state court's determination that the claim was unpreserved for appellate review constituted an adequate and independent state law ground.

Respondent's Objections to the Report and Recommendation contain detailed argument concerning this issue, supported by citations to the trial transcript and applicable case law in contrast, as noted above, to the conclusory assertion of procedural default in its initial opposition[7]

However, Respondent's argument is unavailing because it is (a) not clear that the Appellate Division found that the *due process claim*, as opposed to the hearsay claim, was unpreserved and (b) under New York law and given the realities of trial, the reference by Petitioner's trial counsel to the "unfairness" caused by the trial court's ruling was sufficient to make the trial court aware of the federal fundamental fairness/due process claim at issue. See CPL §470.05(2); see also,Cotto v. Herbert, 331 F.3d 217, 239 (2d Cir. 2003); Fong v. Poole, 522 F.Supp.2d 642, 651 (S.D.N.Y. 2007) .

        **a.      Lack of Clear Reliance upon State Procedural Bar**

The Appellate Division concluded that "[d]efendant failed to preserve for [their] review his contention that hearsay statements made to witnesses by an individual implicating

---

[7]Given that Respondent has offered additional arguments and case law in support of his assertion that the due process claim is procedurally barred, this Court will avail itself of the opportunity to revise and expand upon its prior findings and recommendation concerning this issue.

himself in the shooting should have been received as declarations against penal interest."
Wright,  703 N.Y.S.2d 782.

However, the Appellate Division's ruling was addressed only to the question of whether the Leggett and McClain testimony should have been admitted under the declaration against penal interest exception to New York's hearsay rule. The court made no reference to Petitioner's argument that constitutional due process, as articulated by the Supreme Court in Chambers, required that the testimony be admitted even if it was otherwise inadmissable as hearsay.

In other words, while the Appellate Division clearly ruled that the hearsay issue was unpreserved, it made no specific finding as to whether the *due process* claim was preserved for appellate review.  As set forth below, the issues of hearsay and due process in this context, while obviously related, are separate matters.

The Appellate Division's inquiry apparently ended with its determination that the testimony in question was hearsay and that the declaration against penal interest exception did not apply.  However, under the standard articulated by the Supreme Court in Chambers, due process requires that a defendant be permitted to offer otherwise inadmissible exculpatory evidence where: (1) it has sufficient indicia of reliability and (2) its exclusion would deprive the defendant of a fundamentally fair trial.

Accordingly, the fact that the testimony of Leggett and McClain may have been technically inadmissible as hearsay under New York law does not end the analysis.  Rather, clearly established federal law, as determined by the Supreme Court, requires that a further determination be made regarding whether the testimony should nevertheless have been admitted under Chambers.  The Appellate Division ended its analysis of this issue without

11

referring to due process or even mentioning <u>Chambers</u>.

As such, it is not clear that the Appellate Division *actually* concluded that Petitioner's due process claim was unpreserved. Given that the state court's "reliance on local law" with respect to the due process claim "is not clear from the face of the court's opinion," this Court finds that the claim is not procedurally barred. <u>See</u> <u>Fama v. Comm'r of Correctional Srvcs.</u>, 235 F.3d 804, 811 (2d Cir. 2000); <u>Moore v. West</u>, No. 03-CV-0053, 2007 WL 1302426, at *19 (N.D.N.Y. May 1, 2007) ("For a federal court to deny habeas review based on the independent and adequate state ground doctrine, it must be clear that the state court actually relied upon the procedural bar as an independent basis for its disposition of the claim.").

### b.   State Procedural Bar Lacked an Adequate Basis

In any event, as outlined in the Report and Recommendation, Petitioner's trial counsel did, in fact, preserve both the hearsay claim and due process issue for appeal by substantially complying with New York's contemporaneous objection rule.

Contrary to the  Appellate Division's findings, a review of the trial transcript reveals that Petitioner's trial counsel interposed contemporaneous objections to the trial court's exclusion of Leggett and McClain's testimony. (T at 760-763).  To wit, Petitioner's trial counsel provided argument and an offer of proof regarding the admissibility of McClain's testimony. (T at 754-760).  In particular, defense counsel contended that the testimony was admissible and suggested that exclusion of the same would result in "unfairness" to the defendant. (T at 759-60).

Although trial counsel did not make specific reference to <u>Chambers</u>, he substantially complied with the contemporaneous objection rule by arguing that the testimony of Leggett

12

and McClain was admissible, noting exceptions to the trial court's rulings, and alerting the trial court to the fact that the exclusion of the exculpatory testimony was resulting in "unfairness" to Petitioner.  As such, Petitioner's trial counsel made his position known to the court with sufficient specificity, given the realities of trial, to allow the court to respond and address the issue, as required under New York's contemporaneous objection rule. See Cotto v. Herbert, 331 F.3d 217, 239 (2d Cir. 2003) (holding that, prior to finding a claim procedurally barred, habeas court must determine whether petitioner had "substantially complied" with the state procedural rule given "the realities of trial"); Fong v. Poole, 522 F.Supp.2d 642, 651 (S.D.N.Y. 2007) ("Even if defendant only 'impliedly sought a ruling' from the court, he can be 'deemed to have sufficiently protested [the court's] ultimate determination . . . thereby preserving the issue for appellate review.'") (quoting People v. Garraway, 779 N.Y.S.2d 925, 925 (3d Dep't 2004)).

Accordingly, this Court finds that the procedural bar cited by the Appellate Division in this particular case was not adequate to preclude federal habeas review of the merits of Petitioner's claim.  See Tunnon v. Miller, No. 01-CV-8318, 2003 WL 22964569, at *4 (E.D.N.Y. Sept. 18, 2003) ("Review of the transcript shows that objection was lodged by defense counsel in sufficient manner to have placed the trial court on notice that petitioner was challenging the statements on hearsay grounds. The procedural bar under these circumstances was not adequate to bar federal review of the claim."); Murden v. Artuz, 253 F. Supp. 2d 376, 385-86 (E.D.N.Y. 2001) (addressing claim on the merits because there was "some question as to the adequacy of the Appellate Division's reliance on a procedural bar"); see also Williams v. Lane, 826 F.2d 654, 659-61 (7th Cir. 1987) (holding that state court finding of procedural default did not bar review where record showed that defense

13

counsel had made necessary objection at trial).

### 2.      Merits of Due Process Claim

In the event that the District Court is inclined to consider Respondent's new arguments, it is recommended that those arguments be rejected for the following reasons.

Recall that the initial Report and Recommendation found that the Appellate Division's decision was contrary to clearly established federal law, as determined by the Supreme Court of the United States.  Specifically, the Appellate Division did not discuss Chambers and the decision contains no analysis or determination as to whether the mechanistic application of New York's hearsay rule in this particular case deprived Petitioner of his constitutional right to a fundamentally fair trial.

Respondent objects to this Court's finding in this regard on two principal grounds. First, Respondent suggests that the proffered testimony of Leggett and McClain did not bear sufficient indicia of reliability, as required under Chambers.  Second, Respondent argues that Petitioner suffered no prejudice from the exclusion of the exculpatory testimony and, thus, was not deprived of a fundamentally fair trial.  This Court will address each argument in turn.

### a.      Indicia of Reliability

In Chambers v. Mississippi, the Supreme Court held that "the Due Process Clause affords criminal defendants the right to introduce into evidence third parties' declarations against penal interest – their confessions – when the circumstances surrounding the statements 'provid[e] considerable assurance of their reliability.'" Lilly v. Virginia, 527 U.S. 116, 127, 119 S. Ct. 1887, 1895 (1999) (quoting Chambers, 410 U.S. 284, 300, 93 S. Ct.

1038, 35 L.Ed. 2d 297 (1973)).

Under the Second Circuit's interpretation of <u>Chambers</u>, trial court evidentiary rulings will be set aside "where the evidence excluded is of extreme probative value, *for example confessions of a third party*, and where the evidence has substantial indicia of reliability, including corroboration." <u>Soto v. Lefevre</u>, 651 F. Supp. 588, 597 (S.D.N.Y. 1986) (citing <u>Grochulski v. Henderson</u>, 637 F.2d 50, 55 (2d Cir.1980)) (emphasis added).

In the present case, there can be little doubt that the testimony regarding Jamie Thompson's confession was of exceptional probative value. Indeed, a third party confession is the paradigm example of highly probative evidence, particularly where, as here, the defense theory at trial was based upon the argument that the person who confessed actually committed the crime.

Respondent contends that what this Court has found to be exceptionally probative testimony from McClain and Leggett was nevertheless inadmissible because it lacked sufficient indicia of reliability to justify admission under the standard articulated in <u>Chambers</u>. However, the circumstances surrounding the statements of Leggett and McClain provided considerable assurance of their reliability.

First, as with the third party confession in <u>Chambers</u>, Jamie Thompson's statement to Leggett "was in a very real sense self-incriminatory and unquestionably against interest." <u>Chambers</u>, 410 U.S. at 300. Indeed, the statement was particularly against Thompson's penal interest at the time it was made due to the fact that Thompson had been charged with Crouse's murder.[8]

---

[8]As noted in the Report and Recommendation, both Petitioner and Jamie Thompson were charged with shooting Crouse. It appears that Thompson remained so charged until sometime after Petitioner was convicted, at which time the charges were presumably dismissed.

Second, there is no evidence that Leggett and McClain knew Petitioner or would have any reason to lie on his behalf.   Moreover, Leggett and McClain surely could not have hoped to secure a favorable disposition with respect to their particular charges by testifying *on behalf of the defense.*  As such, on that basis alone, neither Leggett nor McClain appears to have had any motive whatever to fabricate testimony.  See Mendez v. Artuz, No. 98-Civ-2652, 2000 WL 722613, at *16 (S.D.N.Y. June 6, 2000), report & rec. adopted, 2000 WL 1154320 (S.D.N.Y. Aug. 14, 2000), aff'd, 303 F.3d 411 (2d Cir.2002) (finding that third party statement bore sufficient indicia of trustworthiness because, *inter alia*, "there is no reason to believe" that the proposed witnesses "were lying when they testified that [third party] confessed . . .").

Third, like the statement at issue in Chambers, the testimony of Leggett and McClain was "corroborated by some other evidence in the case." Chambers, 410 U.S. at 300.  As a threshold matter, McClain's testimony corroborated Leggett's testimony and *vice versa*.  In addition, James Donatello initially identified Jamie Thompson from a photo array and later told the police he was certain Thompson was the shooter.  Two witnesses stated that the shooter wore a black knit cap and such a cap was found in Thompson's bedroom shortly after the shooting.  Lastly, the fact that Jamie Thompson had been charged with Crouse's murder and, in fact, remained so charged pending the prosecution of Petitioner, at the very least, demonstrated a strong belief on the part of the prosecution that Thompson may have been the perpetrator.

In this regard it should be noted that Chambers does not require that the corroborative evidence be irrefutable.  Rather, the "court must examine the quality of the evidence collectively to determine if the out-of-court statement at issue bears adequate

16

indicia of reliability." See Wallace v. Price, 265 F.Supp.2d 545, 556 (W.D.Pa. 2003). "If the court determines that it does, it then becomes the jury's task to determine how the disputed evidence affects the prosecution's burden to prove guilt beyond a reasonable doubt." Id.

Fourth and finally, the Court notes that Jamie Thompson was also charged with shooting Crouse, and remained in custody until sometime after Petitioner was convicted of the crime. Thus, Thompson was available to testify at trial and could have been called by the prosecution to rebut the testimony of Leggett and McClain. Indeed, it was on that basis that the trial court ruled that their testimony was inadmissible, *i.e.* because Jamie Thompson was not "unavailable," as required by the New York evidentiary rule of a declaration against penal interest exception to the hearsay rule.

This factor weighs heavily in favor of a finding of reliability and admissibility under Chambers because "if there was any question about the truthfulness of the extrajudicial statements," Jamie Thompson "could have been cross-examined by the State, and his demeanor and responses weighed by the jury." Chambers, 410 U.S. at 300; see also Wallace, 265 F. Supp. 2d at 557 (noting that "if the trial court admitted [third party's] statement, he would have had a chance to elaborate on it, clarify it, or recant it. With all the facts before it, the jury could have scrutinized his demeanor and weighed his credibility. Because the trial court barred the admission of [the] statement, however, the jury in [petitioner]'s case was never given the opportunity.").

In light of the foregoing circumstances and given the highly probative nature of the exculpatory evidence, the testimony of Leggett and McClain bore sufficient indicia of reliability to justify admission under the Chambers standard. See Mendez, 2000 WL 722613, at *15 (noting that "where the statement forms a critical part of the defense, due process

17

concerns may tip the scales in favor of admissibility")(quoting People v. Darrisaw, 614

N.Y.S.2d 622, 625 (3d Dep't 1994)).

### b.    Prejudice to Petitioner

"[E]rroneous evidentiary rulings do not automatically rise to the level of constitutional

error." Rosario v. Kuhlman, 839 F.2d 918, 924 (2d Cir. 1988). "The court's duty on a petition

for *habeas corpus* is to determine whether the excluded evidence was material to the

presentation of the defense so as to deprive the defendant of fundamental fairness." Id. In

this regard, "[t]he right to present a defense is one of the 'minimum essentials of a fair trial.'"

Id. (quoting Chambers, 410 U.S. at 294).

"It is the materiality of the excluded evidence to the presentation of the defense that

determines whether a defendant has been deprived of a fundamentally fair trial." Id. at 925.

As such, to determine whether the excluded testimony was "material" to the defense, this

Court must evaluate the evidence in the context of the entire trial record to determine

whether "such testimony, if received in evidence, could have created a reasonable doubt

that did not otherwise exist . . . ." Id. at 927. In other words, this Court must determine "what

the impact of the excluded evidence would have been if it had been admitted." Collins v.

Scully, 755 F.2d 16, 18 (2d Cir. 1985).

In support of his Objections, Respondent seeks to bolster the strength of the

prosecution's proof by repeatedly noting that several eyewitnesses testified that Petitioner

was the shooter. Essentially, Respondent contends that the evidence of Petitioner's guilt

was so compelling that the evidence of Jamie Thompson's confession would not have

changed the jury's verdict even if it had been admitted.

However, as explained in the Report and Recommendation and outlined further below,

18

the strength of the prosecution's case was seriously undermined by the numerous inconsistencies in the eyewitness testimony.[9]  The issue of Petitioner's guilt was a close question on the evidentiary record presented to the jury and the admission of additional exculpatory evidence would very likely have tipped the scales in favor of Petitioner.

The eyewitnesses on behalf of the prosecution were the victim's three companions (Joseph Donatello, Ciro Raspante, Gabriel Ingrassia) and two others (Alexander Thompson and Brent Mowrey).  Each witness will be discussed in turn.

### i. Joseph Donatello

Joseph Donatello was shown a photo array shortly after the shooting and identified Jamie Thompson as the shooter. (T at 290, 296, 300-301, 710).  At the same time, Donatello was shown a photo array that included Petitioner's photograph, but did not identify Petitioner as the gunman.  (T at 314).  Donatello returned to the police station the day after the shooting and advised the police that he remembered that the shooter's name was Jamie Thompson, explaining that he was certain Thompson was the shooter, because they had attended school together. (T at 290-91, 304, 710-711).

### ii. Ciro Raspante

Ciro Raspante initially told the police that he could identify the shooter if he saw him again, but he was unable to identify the shooter after being shown photo arrays that included photographs of Petitioner and Jamie Thompson. (T at 349, 350).

---

[9]The prosecution also presented testimony from three "jailhouse informants" (John Davis, Lester Brown, and David Dickan) regarding inculpatory statements allegedly made by Petitioner while he was in custody.  Davis testified that he overheard Petitioner talking about disposing of a gun.  (T at 530).  Davis waited over six (6) months before approaching the District Attorney and offering to provide testimony against Petitioner.  (T at 543).  Brown and Dickan testified to inculpatory statements made by Petitioner. (T at 567, 604).  Both men had extensive criminal records and received favorable sentencing recommendations in exchange for their testimony.  (T at 556-57, 589-96, 608-12).

### iii. Gabriel Ingrassia

Although Gabriel Ingrassia testified that Petitioner was the shooter, the defense presented testimony from Michael Reed regarding a conversation that he had with Ingrassia. Reed testified that Ingrassia told him that Jamie Thompson was the real shooter, but that Ingrassia explained that he did not want to testify to that effect because Thompson was "too young." (T at 737- 738, 753).

### iv. Alexander Thompson

Alexander Thompson, Jamie Thompson's uncle, testified on behalf of the prosecution while awaiting sentencing on felony assault charges. Thompson received a recommendation by the prosecution that he be sentenced to time served in exchange for his testimony. (T at 380, 393, 419). In addition, Norman Deep, an attorney who initially represented Petitioner, testified that Alexander Thompson told him that he "want[ed] to testify that [Petitioner] was not the shooter," but would only do so if he could "get a deal." (T at 769, 771-72). Deep testified that when he asked whether Jamie Thompson was the shooter, Alexander Thompson replied, "I'm not going to say until I'm on the stand." (T at 771).

### v. Brent Mowery

Brent Mowery, who was twelve (12) years old at the time of trial, was interviewed by the police shortly after the shooting, but did not tell them what he had seen. (T at 477). In fact, Mowrey did not identify Petitioner as the shooter to the authorities until January 18, 1996, more than two months after the murder. (T at 478).

The prosecution's case against Petitioner was largely built upon the eyewitness testimony of the foregoing witnesses. It has been noted that "even a case built on several

eyewitness identifications may warrant habeas relief if evidence undermining confidence in those identifications was improperly excluded." Dey v. Scully, 952 F. Supp. 957, 974 (E.D.N.Y. 1997).

Indeed, the Second Circuit has held that the "issue of misidentification is absolutely fundamental to a criminal trial" and has "noted on more than one occasion that eyewitness testimony is often highly inaccurate." Lyons v. Johnson, 99 F.3d 499, 504 (2d Cir. 1996). In fact, the Second Circuit has explained that:

> [T]here can be no reasonable doubt that inaccurate eyewitness testimony may be one of the most prejudicial features of a criminal trial . . . . Because the intrinsic unreliability of eyewitness identifications is so often compounded with the distorting effects of the natural suggestion to the witness that the person on trial is the guilty one, it is no exaggeration to venture that "[t]he influence of improper suggestion upon identifying witnesses probably accounts for more miscarriages of justice than any other single factor-perhaps it is responsible for more such errors than all other factors combined."

Id. (quoting Kampshoff v. Smith, 698 F.2d 581, 585-86 (2d Cir. 1983)).

In Lyons, the court noted that the prosecution's case "seem[ed] to be solidly built upon the identification of three eyewitnesses," but, in fact, "the identifications provided by the prosecution's eyewitnesses were shaky from the start." Id.

Likewise, in the present case, although the prosecution's eyewitness evidence against Petitioner may appear at first glance to be solid, for the reasons set forth above and in the Report and Recommendation, that evidence was "shaky" at best.[10]

Against that backdrop, the testimony of two witnesses regarding a confession by Jamie Thompson could and, indeed, would have created a reasonable doubt that did not

---

[10]The fact that Jamie Thompson was also charged with shooting Crouse, and remained so until Petitioner was convicted of that crime, is perhaps indicative of the prosecution's true feelings concerning the strength of its proof. It suggests that the state held Thompson with the intent to try him if they lost against Petitioner.

otherwise exist.  <u>See</u> <u>Lyons</u>, 99 F.3d at 504 ("Evidence which directly and strongly supports the possibility that a criminal defendant was misidentified certainly raises the specter of reasonable doubt.").  The testimony of Leggett and McClain related to the very heart of the disputed issue at trial – the identity of the shooter.  Their testimony would have provided powerful support for the defense's argument that Jamie Thompson was the true shooter.

Given the evidence already in the record supporting the defense theory (*e.g.,* Donatello's initial statement and photo array identification of Jamie Thompson; the black knit hat in Thompson's bedroom and Crouse's bicycle in his home; Alexander Thompson's statements to Attorney Deep; Ingrassia's statements to Reed), the additional support provided by testimony from two witnesses that Jamie Thompson confessed to the crime certainly could have, and indeed would have, tipped the scales in favor of a finding of reasonable doubt.

## IV. CONCLUSION

For the foregoing reasons and the reasons set forth in the Report and Recommendation issued by this Court on July 31, 2007 (Docket No. 26), it is respectfully recommended that the Amended Petition(Docket No. 6) be conditionally GRANTED based upon the violation of Petitioner's due process rights.  Specifically, it is recommended that the Amended Petition be granted and that the State of New York be directed to immediately vacate Petitioner's conviction.  It is further recommended that the State be ordered to release Petitioner from custody within thirty (30) days from the entry of an Order adopting or approving this Report and Recommendation, "unless New York State has, by that point,

taken concrete and substantial steps expeditiously to retry" Petitioner.[11]  Pavel v. Hollins, 261 F.3d 210, 229 (2d Cir. 2001).

It is further respectfully suggested that if Respondent persists in offering new and expanded arguments in opposition to the Amended Petition, this Court recommends the *sua sponte* appointment of counsel on behalf of Petitioner.


Respectfully submitted,


Victor E. Bianchini
United States Magistrate Judge


DATED:        April 15, 2008

                     Syracuse, New York


## V. ORDERS


Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Supplemental Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Supplemental Report & Recommendation to all parties.

**ANY OBJECTIONS to this Supplemental Report & Recommendation must be filed**

---

[11]Petitioner has been in custody for approximately 12 years. This habeas case was commenced on April 11, 2001, in the Western District of New York and transferred to the Northern District on April 11, 2002.  The matter was referred to this Court for a Report and Recommendation on February 1, 2007.

with the Clerk of this Court within ten(10) days after receipt of a copy of this Supplemental Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).

**FAILURE TO FILE OBJECTIONS TO THIS SUPPLEMENTAL REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material ***which could have been, but were not***, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

April 15, 2008

Victor E. Bianchini
United States Magistrate Judge